UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LIBERTY CITY MOVIE, LLC, | ) | Case No. CV 19-02582 DDP (SSx) |
| Plaintiff, | ) | |
| v. | ) | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| Defendants. | ) | [Dkt. 20] |

Presently before the court is Defendant U.S. Bank National Association ("U.S. Bank")'s Motion to Dismiss. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

**I. Background**

A. Factual History

In July 2011, Cutting Edge Pictures, a subsidiary of The Reserve Entertainment Group ("TREG"), and Stereoscope, LLC. ("Stereoscope") entered into a joint venture agreement to produce motion pictures and to organize a joint venture titled Cutting Edge

Stereoscope Motion Pictures, LLC ("CESMP"). (RJN, Ex. 8, ¶ 2.) The agreement required that Stereoscope raise four percent of the financing for a CESMP film, in the amount of $708,000. (Id. ¶ 4-5.) In March, 2012, TREG formed Liberty City Movie, LLC ("LCM"), another joint venture, to begin work on CESMP's first film. (Id. ¶ 6.) LCM's articles of organization designated TREG as LCM's managing member and CESMP as LCM's manager. (Id.)

In April, 2012, LCM entered into an Escrow Agreement with EB Capital LLC dba East Bank and Defendant U.S. Bank, the escrow agent. (Compl. ¶ 6.) In accordance with the Escrow Agreement and the joint venture agreement, CESMP transferred $708,000, the four percent of the movie financing, to the escrow account maintained by U.S. Bank. (Id. ¶ 8; RJN, Ex. 8, ¶ 6.)

At some point after depositing money into the escrow account, CESMP became concerned about the solvency of other funders. CESMP alleges that in May 2012, CESMP sent a letter to U.S. Bank requesting that the bank refrain from transferring funds out of the escrow account for any reason.[1] (Compl. ¶ 14; RJN, Ex. 8, ¶ 7.) In June, LCM delivered an incumbency certificate to U.S. Bank stating that Lamont Cain ("Cain") and Allen Bates ("Bates"), TREG's principals, were authorized representatives of LCM who could control allocation of the escrow funds. (Id. ¶ 18.) Plaintiffs allege that LCM sent this certificate at U.S. Bank's suggestion, and that U.S. Bank "counseled [TREG] principals on how to limit the input and direction of CESMP by recommending covert creation of an

---

[1] Defendant maintains that the letter to U.S. Bank was actually sent by Stereoscope, not CESMP. (Mot. Dismiss at 8 n.5; RJN, Ex. 5, Ex. D.)

2

incumbency certificate." (Compl. ¶ 17; RJN, Ex. 2, ¶ 15.) Additionally, LCM amended its articles of organization to remove CESMP as a manager of LCM. (RJN, Ex. 22.)

By November 2012, the relationship between TREG and Stereoscope had deteriorated to the point that an arbitration action was filed regarding the disposition of the escrowed funds. (Id. ¶ 21-23.) Soon after, LCM's representatives instructed U.S. Bank to wire transfer $705,892 from the escrow account to a new account with a different bank. (Id. ¶ 23.) Later, TREG opened a second escrow account with U.S. Bank and deposited $500,000 of LCM's original escrow funds into the second account. (Compl. ¶ 25.)

B. Procedural History

In October 2013, the arbitrator issued a final decision finding TREG, LCM, and Cutting Edge Pictures liable for fraud and awarding Stereoscope $708,000, plus punitive damages and fees. (RJN, Ex. 8, ¶ 10.) The arbitration award was confirmed by a judgment in California state court. (RJN, Ex. 17.) U.S. Bank also filed an interpleader action in California state court regarding the $500,000 in the second escrow account. (RJN, Ex. 18, ¶ 11.) In June 2014, the state court ordered U.S. Bank to distribute the $500,000, minus fees, to Stereoscope and the arbitration award's other creditors. (RJN, Ex. 20, ¶ 1-3.)

After the interpleader action, Stereoscope and its principals--Cronkite & Kissell, LLC, David Kissell, and Clint Cronkite--filed a complaint (the "Stereoscope complaint") against U.S. Bank in California state court, which was subsequently removed to this Court. (RJN, Ex. 8 & 9.) This court granted U.S. Bank's motion to

dismiss the Stereoscope complaint. This Court concluded, in a nutshell, that Stereoscope had not adequately alleged that U.S. Bank disrupted the relationship between Stereoscope and TREG, that U.S. Bank owed Stereoscope, Cronkite, or Kissell any duty, or that U.S. Bank was either negligent intentionally inflicted emotional distress by disbursing escrow funds in accordance with the escrow agreement. (RJN, Ex. 10). The Ninth Circuit affirmed. (RJN, Ex. 13.)

Sometime in late 2016, after litigation against TREG, Plaintiffs' "aggrieved owners" regained control of LCM and CESMP. (Compl. ¶ 1) In July 2017, Stereoscope principal David Kissell reinstated LCM, which had been originally managed by TREG, as an active corporation, now managed by Cronkite & Kissell, LLC. (RJN, Ex. 23.) Later that year, CESMP and the new incarnation of LCM filed another action against U.S. Bank in this Court. (RJN, Ex. 5.) U.S. Bank filed a Motion to Dismiss the First Amended Complaint in that action, arguing that the causes of action for breach of contract, breach of fiduciary duty, and fraudulent concealment claims were all time-barred. (RJN, Ex. 6.) In response, CESMP and LCM voluntarily dismissed their First Amended Complaint. (RJN, Ex. 7.)

In August, 2018, LCM and CESMP filed a new complaint in Ohio state court alleging two causes of action: (1) breach of contract and (2) unlawful conspiracy. (RJN, Ex. 1 at ¶ A, B.) Plaintiffs concede that they filed in Ohio "because it had more plaintiff-friendly statutes of limitations." (Opposition at 1:15-16.) It appears to be undisputed that at the time Plaintiffs filed the Ohio complaint, the Ohio statue of limitations had already run

on the unlawful conspiracy claim, but had not yet run on the breach of contract claim. Statute of limitations issues were not argued, however, to the Ohio court. Instead, U.S. Bank moved to dismiss the Ohio action on forum non conveniens grounds. The court granted the motion, "on the condition that [U.S. Bank] agrees to waive application of the statutes of limitations as a defense if Plaintiffs re-file this action in the Central District of California . . . ." (Compl., Ex. A; RJN, Ex. 4.) U.S. Bank agreed to the Ohio court's condition.

On April 4, 2019, Plaintiffs LCM and CESMP filed the instant Complaint in this Court. Unlike the Ohio complaint, the instant Complaint does not allege a cause of action for breach of contract. Rather, the Complaint here alleges causes of action for (1) conspiracy; (2) aiding and abetting in breach of fiduciary duty; and (3) conversion. (Compl. ¶ 29-39.) U.S. Bank now moves to dismiss the Complaint.

**II. Legal Standard**

A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at

678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 1950. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

    A.   Statute of Limitations

There appears to be no dispute that all three causes of action set forth in the Complaint are time-barred under California law. See Am. Master Lease LLC v. Idanta Partners, Ltd., 225 Cal. App. 4th 1451, 1478 (2014) (statute of limitations for aiding and abetting breach of fiduciary duty is no more than four years); Cal. Code Civ. P. § 338(c) (three year statute of limitations for conversion); Wyatt v. Union Mortg. Co., 24 Cal. 3d 773, 792 (1979) ("The applicable statute of limitations for a civil conspiracy is that for the underlying tort."). Plaintiffs argue, however, that the Ohio court's grant of Defendant's motion to dismiss for forum

6

non conveniens was conditioned upon Defendant's waiver of "any" statute of limitations defenses.

This Court notes that the Ohio court's judgment does not use the word "any." Rather, the Ohio judgment states that Defendant "agrees to waive application of the statutes of limitations as a defense if Plaintiffs re-file this action in the Central District of California . . . ." As an initial matter, it is beyond dispute that the instant Complaint is not identical to Plaintiffs' Ohio complaint. Strictly speaking, therefore, Plaintiffs did not comply with the condition precedent to Defendant's waiver by refiling the action described by the Ohio court as "this action."

Even looking beyond form, the two complaints are substantively quite different as well. The breach of contract claim alleged in the Ohio complaint is not alleged here, and the instant Complaint's tort claims for conversion and aiding and abetting breach of fiduciary duty do not appear in the Ohio complaint. Plaintiffs cannot credibly argue that Defendant's waiver of statute of limitations defenses applied to any conceivable new cause of action, untethered to any claim in the Ohio complaint, that Plaintiffs might choose to bring in the future. Plaintiffs' aiding and abetting and conversion claims are therefore barred by the applicable California statutes of limitations.

The waiver question is somewhat closer with respect to conspiracy. The Ohio court's judgment required Defendant to "waive application of the statutes of limitations," plural. By agreeing to that condition, Defendant waived statute of limitations defenses pertaining both to Plaintiffs' breach of contract claim and conspiracy claim. Plaintiffs clearly did not re-file the breach of

contract claim, as they do not now allege any cause of action for breach of contract. Plaintiffs did, however, re-file <u>a</u> conspiracy claim. The question before this Court, therefore, is whether Plaintiffs in fact re-filed <u>the same</u> conversion claim that they asserted in Ohio, and to which Defendant has waived any statute of limitations defense. If, on the other hand, the conspiracy claim alleged here is not the same as that alleged in Ohio, Plaintiffs cannot be said to have "re-filed" their Ohio conspiracy claim, and Defendant's waiver will not apply.

Comparing the two conspiracy claims is easier said than done. The Ohio complaint refers to U.S. Bank's "unlawful conspiracy" with LaMont Cain and Allen Bates. (RJN Ex. 1 ¶¶ 21, B.) The Ohio complaint alleges that Defendant advised Cain and Bates to gain sole control of the escrow account through the use of an incumbency certificate, and then to remove most, but not all of the escrowed funds, so as to conceal the withdrawal from CESMP. (RJN Ex. 1 ¶ 15.) The Ohio complaint does not, however, explain how that alleged collaboration was unlawful.

The instant Complaint more succinctly alleges that U.S. Bank. "entered into an unlawful . . . conspiracy with LaMont Cain and Allen Bates to remove and take the money deposit that CESMP had deposited into the escrow account . . . ." (Compl. ¶ 30.) Although the Complaint, like the Ohio complaint, does not specifically allege the tort predicate for the conspiracy claim, it does appear that the conspiracy claim alleged in the instant Complaint is the same claim alleged in the Ohio complaint. Because Defendant agreed to waive the statute of limitations defense with respect to the Ohio conspiracy claim, it is barred from raising

such a defense to that claim now that it has been re-filed before this Court.

B. Res Judicata

Having concluded that Defendant may not raise a statute of limitations defense to Plaintiffs' conspiracy claim, the Court now looks to Defendant's other defenses, including Defendant's argument that the conspiracy claim is barred by the doctrine of res judicata. "[A] federal court sitting in diversity must apply the res judicata law of the state in which it sits." Constantini v. Trans World Airlines, 681 F.2d 1199, 1201 (9th Cir. 1982). California law looks to federal law to determine the effect of a prior federal judgment. Id. Res judicata "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." Owens v. Kaiser Foundation Health Plan, Inc. 244 F.3d 708, 713 (9th Cir. 2001); W. Radio Servs. Co. v. Glickman, 123 F.3d 1189, 1192 (9th Cir. 1997). The doctrine applies when there is "1) [an] identity of claims, 2) a final judgment on the merits, and 3) identity or privity between the parties." W. Radio Servs. Co., 123 F.3d at 1192.

Defendant argues that the conspiracy claim alleged here was, or could have been, raised in the Stereoscope action that this Court dismissed. (Motion at 15.) Courts in the Ninth Circuit rely on four factors to determine if there is an identity of claims:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

Harris v. Jacobs, 621 F.2d 341, 343 (9th Cir. 1980); Constantini, 681 F.2d at 1201-02. The central issue in determining whether there is an identity of claims is whether the two suits "arise out of the same transactional nucleus of facts." Costantini, 681 F.2d at 1202; see also Frank v. United Airlines, Inc., 216 F.3d 845, 851 (9th Cir. 2000). Satisfaction of the fourth Constantini factor is often sufficient to find an identity of claims for res judicata purposes, even without analysis of the other factors. Quinto v. JPMorgan Chase Bank, No. 11-CV-02920, 2011 WL 6002599, at *8 (N.D. Cal. Nov. 30, 2011); see also Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension, Welfare and Training Trust Funds v. Karr, 994 F.2d 1426, 1430 (9th Cir. 1993).

Here, Plaintiffs do not dispute that there is an identity of claims between this action and the Stereoscope action for purposes of res judicata. (Opposition at 14-15.) Plaintiffs contend, however, that CESMP and LCM were neither parties to the Stereoscope action nor in privity with the plaintiffs in the Stereoscope action. (Opp. at 15:4-8.) Privity between a party and nonparty to a prior action exists when the nonparty is a successor to the party, controlled the original suit, where the nonparty's interests were adequately represented by the party to the original suit, or where there is a "substantial identity" between the nonparty and the prior party. In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997) (internal citations omitted).

Plaintiffs appear to argue that this Court should ignore any relationships between LCM, CESMP, and Stereoscope prior to December 2016 because, up to that point, LaMont and Cain controlled LCM and CESMP and were "bitter adversaries" to the Stereoscope plaintiffs.

10

(Opp. at 15:18.) Thus, Plaintiffs appear to suggest, the prior incarnations of LCM and CESMP did not share interests with the current, Kissell & Cronkite controlled versions of those entities.

Plaintiffs' privity arguments are difficult to square, however, with their prior pleadings. Before voluntarily dismissing their First Amended Complaint and re-filing in Ohio, Plaintiffs alleged in this Court that "CESMP, acting as the manager member of LCM through its co-managing member Stereoscope" asked U.S. Bank not to disburse any funds from the escrow account in late May 2012. (RJN Ex. 5 ¶ 18.) Indeed, in the 2014 Stereoscope action itself, Plaintiffs, including Stereoscope, alleged that Stereoscope had "ownership and co-manager status in CESMP." (RJN Ex. 8 ¶ 14.) Furthermore, although the instant Complaint alleges that CESMP sent U.S. Bank a letter in 2012 instructing it not to disburse escrow funds, the actual letter, which Plaintiffs attached to their earlier complaint prior to Plaintiffs' voluntary dismissal, plainly originated from Stereoscope, not CESMP. (RJN Ex. 5 at Ex. D.) Thus, Plaintiffs' argument that CESMP and Stereoscope were working at cross-purposes prior to December 2016 is not convincing.

This Court concludes that LCM and CESMP are in privity with Stereoscope.[2] Accordingly, Plaintiffs' conspiracy claim, which shares an identity of claims with claims brought in the Stereoscope action, is barred by the doctrine of res judicata.

*//*
*//*
*//*

---

[2] As stated above, Kissell & Cronkite, who have owned Stereoscope at all times, now control both LCM and CESMP.

11

**IV. Conclusion**

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED. Plaintiff's Complaint is DISMISSED, with prejudice.

IT IS SO ORDERED.

Dated: August 1, 2019

DEAN D. PREGERSON
United States District Judge